UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

CARL WELLS,

                    Plaintiff,

                                        **MEMORANDUM AND ORDER**

          -against-                     16-CV-825 (KAM)(ST)


CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, COMMISSIONER
JOSEPH PONTE, SUPERINTENDENT MINGO, AND
SUPERINTENDENT GLENN,

                    Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

          On February 11, 2016, *pro se* plaintiff Carl Wells

("plaintiff" or "Wells") brought an action against defendants

City of New York, then Department of Correction Commissioner

Joseph Ponte, Bureau Chief Mingo, and Warden Glenn[1]

("defendants"), alleging that he was exposed to oleoresin

capsicum spray twice while incarcerated, and that the defendants

were deliberately indifferent to his medical needs.  (ECF No. 1,

Complaint; ECF No. 111, Defendants' Memorandum of Law in Support

of Their Motion to Enforce the Parties' Settlement Agreement

(Defs' Memo) at 4.)  On November 27, 2017, the defendants filed

---
[1] Although plaintiff identified defendants Mingo and Glenn as superintendents,
defense counsel has clarified that their titles are Bureau Chief and Warden
respectively.  (*See* ECF No. 110-1, Declaration of Geoffrey M. Stannard in
Support of Defendants' Motion to Enforce the Parties' Settlement Agreement ¶
1.)

a Stipulation and Order of Dismissal signed by plaintiff and defense counsel, asking the court to "so order" the document. (ECF No. 74, Filed Stipulation and Order of Dismissal.) On December 6, 2017, plaintiff advised the court that the stipulation was "voided and not valid," and that he did not consent to a settlement. (ECF No. 84, Pl's Dec. 6, 2017 Letter.) Defendants subsequently moved to have the settlement enforced. (ECF No. 109, Notice of Motion.) For the reasons stated below, defendants' motion to enforce the settlement is granted.

## BACKGROUND

Plaintiff Carl Wells is currently incarcerated on Rikers Island. (*See* ECF No. 1, Complaint at 1.) Plaintiff alleges that on January 4, 2016 and February 4, 2016, he was exposed to a chemical agent, which the defendants identify as oleoresin capsicum spray. (ECF No. 1, Complaint at 3, 5; ECF 111, Defs' Memo at 4.) Plaintiff brought an action against the defendants, alleging that they were negligent and violated his constitutional rights when they exposed him to the chemical agent and failed to provide medical treatment for the exposure. (ECF No. 1, Complaint at 5, 8.) Plaintiff sought compensatory and punitive damages, costs, and attorney's fees as his relief. (*Id.* at 8.)

On October 23, 2017, defendants informed the court that the parties had settled and intended to file a stipulation

of dismissal within thirty days.[2]  (ECF No. 69, Defs' Oct. 23, 2017 Letter.)  That same day, defendants mailed the plaintiff settlement papers, which consisted of a Stipulation and Order of Dismissal; a Stipulation of Settlement; a General Release; and an Affidavit and Status of Liens form.  (ECF No. 111, Defs' Memo at 5; ECF No. 110-3, Ex. C (collectively "Unexecuted Settlement Documents").)  Plaintiff signed all four documents on November 1, 2017; plaintiff has not denied that he did so, and the General Release and Affidavit and Status of Liens were notarized on that date.  (ECF No. 110-4, Ex. D (collectively "Wells Executed Settlement Documents").)

Between November 1 and November 26, plaintiff made several communications to the defendants and the court in which he expressed ambivalence about the settlement offer or rejected its terms.  (See ECF No. 111, Defs' Memo at 5; ECF No. 71, Defs' Nov. 6, 2017 Letter; ECF No. 76, Pl's Nov. 11, 2017 Letter.)  On November 26, 2017, plaintiff informed the defendants that he had signed the settlement documents and instructed the defendants to process them.  (ECF No. 111, Defs' Memo at 5.)  The defendants received the documents on November 27, 2017, which defense counsel then signed, and they filed the Stipulation and Order of Dismissal the same day.  (ECF No. 111, Defs' Memo at 5; ECF 110-

---

[2] Except as relevant to the motion to enforce the settlement agreement, the court will not evaluate the substantive merits of the plaintiff's underlying claims.

5, Ex. E (collectively "Jointly Executed Settlement Documents");
ECF No. 74, Filed Stipulation and Order of Dismissal.)

After the court received the jointly executed
stipulation, the court received a letter dated November 11, 2017
from the plaintiff that did not appear to acknowledge the
stipulations of settlement and dismissal or the release,
documents which he signed on November 1, 2017 and later
confirmed that he had signed on November 26, 2017. (*See* ECF No.
76, Pl's Nov. 11, 2017 Letter.) Plaintiff's letter to the court
predated defendants' receipt of the settlement papers from the
plaintiff. The court ordered the parties to appear before
Magistrate Judge Tiscione for a status and settlement
conference. (Dkt. Entry dated Dec. 1, 2017.) On December 6,
plaintiff also filed a letter with the court, advising that the
stipulation was "voided and not valid," and that plaintiff did
not consent to a settlement. (ECF No. 84, Pl's Dec. 6, 2017
Letter.)

Because the parties were unable to resolve the dispute
at the status and settlement conference, the defendants
subsequently sought leave to file a motion to enforce the
settlement agreement that was jointly executed in November 2017.
(ECF No. 88, Defs' Jan. 11, 2018 Letter; ECF No. 90, Defs' Jan.
22, 2018 Letter.) The court granted the defendants' request and

briefing was fully submitted on June 1, 2018.  (Dkt. Entry dated
Mar. 16, 2018; ECF No. 109, Notice of Motion.)

## LEGAL STANDARD & DISCUSSION

Defendants argue that settlement agreements are
binding contracts that should be construed in accordance with
general principles of contract law and that such agreements are
strongly favored by courts.  (ECF No. 111, Defs. Memo at 5-6.)
Here, the parties executed a written settlement agreement, which
should not be invalidated solely because one party has regrets
after signing.  (*Id.* at 6-7.)  Defendants further argue that,
under the general principles of contract law, plaintiff must
establish that there was a unilateral mistake on his part and
fraudulent concealment by the defendants to have the contract
voided.  (*Id.* at 7-8.)  But the plaintiff was given settlement
papers with clear language, had sufficient time to consider the
offer, and had experience settling prior claims with the City of
New York.  (*Id.*)

Plaintiff did not file a formal brief in opposition to
defendants' motion.  Instead, plaintiff served a motion for
summary and default judgment (ECF No. 112, Pl's Motion) and a
supplemental affirmation to the motion for summary and default
judgment (ECF No. 113, Pl's Supp. Aff.).  Defendants argue that
the court should consider their motion unopposed because the
plaintiff did not file an opposition.  (ECF No. 114, Defendants'

5

Reply Memorandum of Law in Support of Their Motion to Enforce
the Parties' Settlement Agreement ("Defs' Reply") at 1.)
Following the Second Circuit's practice to construe *pro se*
filings liberally, the court considers the arguments in
plaintiff's filings that are relevant to the defendants' motion
for enforcement of the settlement.

Plaintiff argues that the settlement agreement is
unenforceable because the agreement was not voluntary, clear,
explicit, or made on the record. (ECF No. 112, Pl's Motion at
2.) He also argues that he was coerced, under duress, and
lacked the mental capacity to enter into an agreement with the
defendants. (ECF No. 112, Pl's Motion at 2; ECF No. 113, Pl's
Supp. Aff. at 2.) Finally, plaintiff contends that the
agreement is invalid because the defendants produced evidence
relevant to his case after he signed the settlement documents.
(ECF No. 112, Pl's Motion at 3; ECF No. 113, Pl's Supp. Aff. at
1.)

Defendants counter that plaintiff has not established
that he lacked the mental capacity to enter into an agreement
when he signed or mailed the settlement documents, or at any
point during this litigation. (ECF No. 114, Defs' Reply at 2-
3.) Defendants also argue that the untimely production of
evidence did not have a material adverse effect on plaintiff and

6

cannot be the basis of a unilateral mistake that would invalidate the settlement agreement. (*Id.* at 3-4.)

After evaluating the parties' arguments, the court concludes that the parties entered into a binding contract and grants the defendants' motion to enforce the settlement.

## I. Enforceability of a Settlement Agreement

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). *See also United States v. Sforza*, 326 F.3d 107, 115 (2d Cir. 2003) ("An agreement to end a lawsuit is construed according to contract principles.") "A settlement . . .[,] once entered into[,] is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir. 1989), *overruled on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994). "Settlement agreements are strongly favored in New York and may not be lightly cast aside." *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997), *aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998).

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). "[A] court may vacate

a stipulation of settlement only upon a showing of good cause, such as fraud, collusion, mistake, duress, lack of capacity, or where the agreement is unconscionable, contrary to public policy, or so ambiguous that it indicates by its terms that the parties did not reach agreement." *Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010). *See also Willgerodt* at 560 ("A court may relieve a party of the consequences of a settlement agreement '[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident . . . .'" (citing *Rivera v. State*, 496 N.Y.S.2d 230, 231 (N.Y. App. Div. 1985)).

## II.  Establishing the Contract

Plaintiff states that the court may enforce a settlement agreement if there was a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record." (ECF No. 112, Pl's Motion at 2 (citing *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL–CIO*, 402 F.3d 314, 318 (2d Cir. 2005)).) He argues that the stipulation in this case was "not voluntary, . . . clear, . . . explicit[,] . . . [or] on the record[.]" *Id.* The Second Circuit in *Role*, however, was addressing "whether the oral stipulation of dismissal entered into by the parties . . . [was] enforceable despite the fact that no formal stipulation, signed by the parties, was filed." *Role*, 402 F.3d at 318.

By contrast, there is a formal stipulation that was signed by the parties and filed with the court in this case. (*See* ECF No. 74, Filed Stipulation and Order of Dismissal.) Moreover, plaintiff confirmed to the defendants on November 26, 2017, that he had signed the settlement documents and that they should be processed. (ECF No. 111, Defs' Memo at 5.) A "[s]ettlement [a]greement, signed by the parties, is a 'manifestation of mutual assent [that is] sufficiently definite to assure that the parties [were] truly in agreement with respect to all material terms.'" *Virga v. Concore Equipment, Inc.*, 600 F. App'x 785, 788 (2d Cir. 2015) (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir.2007)). And once there is an agreement, "[a]fterthought or change of mind are not sufficient to justify rejecting a settlement." *Willgerodt*, 953 F. Supp. at 560.

Plaintiff refers to oral discussions with the defendants as evidence that he did not accept their settlement offer. Plaintiff previously discussed the possibility of receiving attorney's fees and costs as part of the settlement. (ECF No. 112-2, Ex. B, Pl's Nov. 11, 2017 Letter ¶¶ 2-3.) He argues that he did not agree to settle the case without these fees. (ECF No. 112, Pl's Motion at 1.)

Plaintiff's regret that he was not given attorney's fees does not change the fact that plaintiff signed (and mailed)

several documents with clear language regarding the resolution of his case. (*See* ECF No. 110-4, Ex. D, Wells Executed General Release at 7 ("I, Carl D. Wells . . . release and discharge defendants . . . from any and all liability, claims, or rights of action . . . including claims for costs, expenses, and attorneys' fees."); ECF No. 110-5, Ex. E Jointly Executed Stipulation of Settlement ¶ 1 ("The above-referenced action is hereby dismissed against defendants . . . without costs, expenses, or attorneys' fees except as specified in paragraph '2' below."); *id.* ¶ 2 ("Defendant City of New York hereby agrees to pay plaintiff Carl Wells the sum of Eight Hundred Fifty ($850.00) Dollars in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees. In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against the defendants . . . including claims for costs, expenses, and attorneys' fees.").) Moreover, plaintiff has admitted that he understood that attorney's fees were not included in the settlement documents he signed. (*See* ECF No. 112-2, Ex. B, Pl's Nov. 11, 2017 Letter ¶ 3 ("The Plaintiff was sent document[s] and [noticed] that the attorney's [fees]/costs were deleted.").)

In addition to including clear terms regarding what the settlement offer included, the settlement documents also clearly stated that the written terms were controlling, and not

any oral conversations (or past written offers).  (*See* ECF No. 110-4, Ex. D, Wells Executed General Release at 7 ("This release may not be changed orally.  The undersigned has read the foregoing release and fully understands it."); ECF No. 110-5, Ex. E, Jointly Executed Stipulation of Settlement at 6 ("This Stipulation of Settlement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation of Settlement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.").)

Whatever concerns plaintiff may have had after receiving the settlement documents, or even after he signed them, he ultimately decided to send the signed documents to the defendants.  Defendants' cover letter for the documents stated that the paperwork was "necessary to effectuate the settlement" and that defense counsel would seek the court's endorsement of the settlement once defense counsel "receive[d] all of the settlement documents, fully executed."  (ECF No. 110-3, Ex. C, Defs' Oct. 12, 2017 Letter at 2; *see also* ECF No. 110-4, Ex. D, Wells Executed Stipulation of Settlement ¶ 3 ("Plaintiff shall execute *and deliver* to the City of New York's attorney all documents necessary to effect this settlement . . . .")

(emphasis added).) Beyond defense counsel's instruction, the significance of plaintiff's mailing the settlement documents is supported by various legal practices. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (describing the federal prison mailbox rule as treating *pro se* documents as filed once placed into the mail system in a variety of contexts); *see also* Restatement (Second) of Contracts § 63 (Am. Law Inst. 1981) ("Unless the offer provides otherwise, . . . an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession . . . .")

Plaintiff entered into a binding contract with the defendants. The court next considers whether any circumstances exist that would otherwise render the contract voidable.

## III. Voiding the Contract

### A. Coercion & Duress

Plaintiff alleges that he was "coerced and under duress . . . when he notarized and signed the Stipulation/Settlement/Agreement Papers." (ECF No. 112, Pls' Motion at 2.) "[A] court may not set aside a settlement on grounds of coercion or duress unless these allegations are substantiated by evidence." *Ortiz v. Dep't of Educ. of NYC*, No. 11-CV-6027, 2015 WL 5518176, at *15 (E.D.N.Y. Sept. 16, 2015) (citing *Willgerodt on Behalf of Majority Peoples' Fund for the*

*21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 561 (S.D.N.Y. 1997)). "In general, repudiation of an agreement on the ground that it was procured by duress *requires a showing of both* [1] *a wrongful threat and* [2] *the effect of precluding the exercise of free will . . . ." United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 88 (2d Cir. 2011) (alteration in original) (citing *In re Guttenplan*, 634 N.Y.S.2d 702, 703 (N.Y. App. Div. 1995)). Duress cannot be established by a threat to take action that is legally permissible, and preclusion of the exercise of free will requires a showing that acceptance of the contract terms was involuntary because circumstances permitted no other alternative. *Id.* (citing *Kamerman v. Steinberg*, 891 F.2d 424, 431-32 (2d Cir. 1989)).

Plaintiff has not proffered any evidence of coercion or duress. Had plaintiff not agreed to settle, defendants would only have taken legally permissible action—continuing to defend the litigation that the plaintiff started with a motion for summary judgment. (*See* ECF No. 110-2, Ex. B, Defs' Oct. 12, 2017 Letter at 2 ("Should you accept this offer, defendants will not serve their summary judgment motion . . . .").) Defendants' settlement offer does not contain any inappropriate threats or pressure, and settling was not plaintiff's only alternative. (*See id.* (Defense counsel wrote, "I sincerely ask that you consider this settlement offer.")) Plaintiff held onto the

settlement documents for over a month, during which he was able to consider the offer before ultimately choosing to accept it. (*See* ECF No. 111, Defs' Memo at 2; *see also* ECF No. 74, Filed Stipulation and Order of Dismissal.)

## B. Mental Incompetence

Plaintiff alleges that he was "under . . . a disability when he notarized and signed the Stipulation/Settlement/Agreement Papers." (ECF No. 112, Pls' Motion at 2.) More specifically, he claims that he was "mentally incompetent" when he signed. (*Id.*) Under both federal and New York state law, the "existence of a person's mental illness in general is not sufficient to prove that person was incapable of forming a contract." *Rivera v. Sovereign Bank*, 976 F. Supp. 2d 270, 274 (E.D.N.Y. 2013) (collecting cases). There must actually be "credible evidence that the illness 'interfered with a person's ability to understand the contract or act in his or her best interest.'" *Id.* (citation omitted).

There are two tests to determine whether to void a contract due to mental incapacity in New York. *See Pusey v. Delta Airlines*, No. 09-CV-4084, 2012 WL 893908, at *7 (E.D.N.Y. Feb. 7, 2012), *report and recommendation adopted sub nom. Pusey v. Delta Airlines, Inc.*, No. 09-CV-4084, 2012 WL 896163 (E.D.N.Y. Mar. 15, 2012). Under the cognitive test, the court determines whether a party's mind was so affected as to render

him wholly and absolutely incompetent to comprehend and understand the nature of the transaction and make a rational judgment concerning that transaction. *Id.* (citing *Blatt v. Manhattan Med. Grp., P.C.*, 519 N.Y.S.2d 973, 975 (N.Y. App. Div. 1987)) (quotations omitted). Under the motivational test, the court determines whether the evidence indicates that a person is suffering from a psychosis which renders him or her incapable of making a voluntary decision, and the other party was, or should have been, aware of the contractor's condition." *Id.* (citing *Blatt* at 976) (quotations omitted).

Plaintiff argues that the contract should be voided under the cognitive test, but cannot prevail under either the cognitive test or the motivational test. Plaintiff submitted a psychiatric report in which a psychiatrist concluded that plaintiff meets the criteria for "an unspecified bipolar disorder and mild neurocognitive disorder . . . ." (ECF No. 113-3, Ex. C, Psychiatric Report at 1.) The "purpose of th[e] evaluation [was] to . . . give an opinion on Mr. Wells' state of mind at the time of the [2006 criminal] incidents in question . . . ." (*Id.*) The psychiatrist interviewed the plaintiff in March 2017, and reviewed a variety of documents relating to plaintiff's health and history. (*Id.* at 2-3.)

During the March 2017 examination, plaintiff "boasted about being able to out research experienced lawyers. He

appeared to have difficulty in asking for legal help from his attorney, but rather was taken with his self-perception of his legal abilities." (*Id.* at 13.) A May 2017 neuropsychological report on plaintiff stated that his "psychotic thinking raises his concerns about his ability to make rational legal decisions and to effectively assist his attorney in his defense." (*Id.* at 12.) Although plaintiff "was admitted to the Kirby Forensic Psychiatric Center on April 20, 2007 for restoration of competency[, he] was reportedly restored to competency in July 2017." *Id.* at 7.

The report does not speak to plaintiff's mind at the time he negotiated, signed, or returned the executed settlement documents, but focuses on his past criminal conduct and a future treatment plan. Although there are comments that plaintiff overestimated his legal ability, those comments do not speak to whether plaintiff understood the settlement agreement. The submissions indicate that plaintiff engaged in several rounds of negotiations, and ultimately obtained a better settlement offer than he was initially given. (*See* ECF No. 114, Defs' Reply at 4 (noting that the plaintiff was offered additional money after he refused a settlement offer that failed to compensate him for the $350 cost of the case filing fee).) When plaintiff received the current settlement offer, he recognized that it did not contain the attorney's fees he wanted, but eventually signed and mailed

16

the settlement papers.  It appears that plaintiff understood the nature of the documents and that each party made concessions to reach an agreement on settlement.  Plaintiff was not incapable of making a voluntary decision and his mind was not so affected that he was incompetent to understand the transaction and make a rational decision regarding the transaction.

### C. Newly Produced Document

Plaintiff argues that the stipulation of settlement is not valid due to the late production of materials subject to a motion to compel, which he claims were produced late in bad faith, and he identifies a correction officer's declaration with 3 pages from a correctional facility's intake logbook as an example of newly discovered evidence.  (ECF No. 112, Pl's Motion at 3; ECF No. 113, Pl's Supp. Aff. ¶ 3; ECF No. 113-2, Ex. B, Declaration of Correction Officer Johnson.)  Plaintiff's argument that newly discovered information frees him from the contract can be interpreted either as a claim of unilateral mistake or fraudulent misrepresentation.  For the first claim, "[a]s a basic proposition, a contract is made voidable by . . . unilateral . . . mistake only where the asserted mistake concerns 'a basic assumption on which the contract was made.'" *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (citing Restatement (Second) of Contracts § 153 (Am. Law Inst. 1981)).  As to the second, "[t]o

17

prevail on a claim for fraud in the inducement of a contract under New York law, [a party] must show '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 998 F. Supp. 2d 301, 318 (S.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

Under either a unilateral mistake or fraudulent misrepresentation theory, plaintiff cannot have the contract voided or rescinded. Plaintiff has not demonstrated that the untimely produced document would affect his underlying action such that he would not have agreed to settle the case if he had been in possession of this document earlier.

Plaintiff has failed to establish any circumstances that render void the settlement agreement he executed.

## IV.  Plaintiff's Motions for Summary Judgment and Default Judgment

As discussed above, plaintiff has filed a motion for summary judgment and default judgment. (ECF No. 112, Pl's Motion.) Plaintiff actually served this motion twice—once as a standalone motion and the other in response to the defendants' motion to enforce the settlement. (*See also* ECF No. 105, Pl's

Motion.)  Although the court has already addressed why the arguments in plaintiff's motions do not prevent enforcement of the settlement agreement, the court independently denies the relief sought in the plaintiff's motions.

Plaintiff requests that the court enters a default judgment against the defendants for failure to timely file their motion to enforce the settlement (or for summary judgment) in accordance with the court's order.  (ECF No. 112, Pl's Motion at 1.)  The court ordered defendants to serve their motion to enforce the settlement by April 16, 2018.  (Dkt. Entry dated Mar. 16, 2018.)  The postmark on the envelope containing defendants' motion is April 16, 2018.  (ECF No. 113-1, Ex. A, Defs' Envelope.)  "A paper is served under [Federal Rule of Civil Procedure 5] by . . . mailing it to the person's last known address—in which event service is complete upon mailing[.]"  Fed. R. Civ. P. 5(b)(2)(C).  Defendants timely complied with the court's order to serve the plaintiff with their motion to enforce the settlement.  Plaintiff's motion for a default judgment is therefore denied.

Plaintiff also moves for summary judgment against the defendants.  (ECF No. 112, Pl's Motion at 1.)  "Unless . . . the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery."  Fed. R. Civ. P. 56(b).  Discovery in this case

closed August 15, 2017.  (*See* Dkt. Entries dated June 28, 2017 and Aug. 17, 2017.)  Plaintiff did not seek the court's leave to move for summary judgment outside of the deadline set by Rule 56(b).  Even if the court were to overlook this failure, plaintiff also failed to provide a statement of facts in compliance with Local Rule 56.1 or to sufficiently support any factual allegations with evidence as required by Federal Rule of Civil Procedure 56(c).  Finally, the court's finding that the settlement agreement is enforceable renders plaintiff's motions moot.  The plaintiff's motion for summary judgment is therefore denied.

**CONCLUSION**

For the foregoing reasons, the court grants the defendants' motion to enforce the parties' settlement agreement and denies the plaintiff's motions for summary judgment and default judgment. The Clerk of Court is respectfully directed to enter judgment in favor of the defendants, serve plaintiff with copies of this Memorandum and Order and the judgment, note service on the docket, and close this case.

**SO ORDERED.**

Dated:    March 18, 2019
          Brooklyn, New York

_____
                                 /s/
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York